# United States Court of Appeals for the Federal Circuit

06-5003, -5021

UNITED KEETOOWAH BAND of
CHEROKEE INDIANS of OKLAHOMA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Cross Appellant,

v.

THE CHEROKEE NATION,

Defendant-Appellee.

Michael Gerard Rossetti, Akin Gump Strauss Hauer & Feld LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was L. Rachel Helyar, of Los Angeles, California.

David C. Shilton, Attorney, Environment and Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-cross appellant. With him on the brief was Matthew J. McKeown, Acting Assistant Attorney General.

Lloyd B. Miller, Sonosky, Chambers, Sachse, Endreson & Perry, LLP, of Washington, DC, argued for defendant-appellee. With him on the brief were Arthur Lazarus, Jr. and Anne D. Noto.

Appealed from: United States Court of Federal Claims

Judge Nancy B. Firestone

# United States Court of Appeals for the Federal Circuit

06-5003, -5021

UNITED KEETOOWAH BAND of
CHEROKEE INDIANS of OKLAHOMA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Cross Appellant,

v.

THE CHEROKEE NATION,

Defendant-Appellee.

———————————————

DECIDED:    March 19, 2007

———————————————

Before SCHALL and GAJARSA, <u>Circuit Judges</u>, and MCKINNEY, <u>Chief Judge</u>.[*]

GAJARSA, <u>Circuit Judge</u>.

The United Keetoowah Band of Cherokee Indians of Oklahoma ("UKB") appeals

and the United States cross-appeals the Court of Federal Claims' ("trial court" or "court")

dismissal of the cause of action brought by the UKB against the United States for

damages arising from a settlement related to the Arkansas River basin.  The trial court

_____

[*]    Honorable Larry J. McKinney, Chief Judge of the United States District
Court for the Southern District of Indiana, sitting by designation.

dismissed the cause of action upon finding under Rule 19 of the United States Court of Federal Claims ("RCFC") that the Cherokee Nation of Oklahoma ("CNO") is both a necessary and an indispensable party that cannot be joined in the action because of the CNO's governmental sovereign immunity.  United Keetoowah Band of Cherokee Indians of Oklahoma v. United States, 67 Fed. Cl. 695 (Fed. Cl. 2005).  Because we find that the trial court erred in finding the CNO a "necessary" party under RCFC 19(a), we reverse.

## BACKGROUND

The underlying dispute in this case derives from The Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act, Pub. L. No. 107-331, 116 Stat. 2845 (2002) (codified at 25 U.S.C. §§ 1779-1779g) ("Settlement Act" or "Act").  This Settlement Act was enacted by Congress to resolve a dispute brought in 1989 in the Court of Federal Claims by the CNO, Choctaw, and Chickasaw tribes (the "settling tribes") in which the three tribes alleged that the federal government had mismanaged the Arkansas Riverbed Lands of Oklahoma ("Riverbed Lands") held in trust by the federal government.  See United States Court of Federal Claims, Case Nos. 218-89L and 630-89L (Cl. Ct. 1989).

The 1989 suit proceeded slowly and was stayed indefinitely pending quiet title actions that the federal government intended to bring against non-Indian occupants who occupied certain portions of the Riverbed Lands.  This court in Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1414-15 (Fed. Cir. 1997), vacated the trial court's stay.  In March of 2000, the UKB submitted an amicus brief urging dismissal of the case, claiming it was a necessary and an indispensable party to the litigation.  In early 2000, the CNO, Choctaw, and Chickasaw began settlement discussions with the

federal government to draft federal legislation settling the mismanagement claims brought in the 1989 suit and extinguishing all tribal claims to certain portions of the Riverbed Lands.

## A.

The settlement discussions between the government and the CNO, Choctaw, and Chickasaw resulted in legislation enacted as the Settlement Act, which resolved the pending 1989 litigation. The Act specifically refers to the three named settling tribes— the CNO, Choctaw, and Chickasaw who were parties to the 1989 suit—collectively as the "Indian Nations." 25 U.S.C. § 1779b. The Settlement Act identifies the "Riverbed Lands" to include the "Drybed Lands," "Disclaimed Drybed Lands," and "Wetbed Lands."[1] Id. One of the major reasons the federal government agreed to pursue the settlement was to avoid thousands of quiet title actions it would have had to bring against non-Indian landowners in portions of the Drybed Lands that those landowners had occupied and economically developed. As the Act explains:

> Much of the Indian Nations' Drybed Lands have been occupied by a large number of adjacent landowners in Oklahoma. Without Federal legislation, further litigation against thousands of such landowners would be likely and any final resolution of disputes would take many years and entail great expenses to the United States, the Indian Nations, and the individuals and entities occupying the Drybed Lands and would seriously impair long-term economic planning and development for all parties.

Id. § 1779.

---

[1] The Settlement Act defines "Drybed Lands" as "those lands which, upon the date of enactment . . . lie above and contiguous with the mean high water mark of the Arkansas River in the State of Oklahoma." 25 U.S.C. § 1779b(2). "Disclaimed Drybed Lands" are defined in the Settlement Act by metes and bounds. Id. § 1779b(1). "Wetbed Lands" are defined as "those Riverbed lands which lie below the mean high water mark of the Arkansas River in the State of Oklahoma." Id. § 1779b(6).

The Settlement Act was enacted to resolve all possible claims involving the Riverbed Lands, including all the claims brought against the United States by the three settling tribes in the 1989 suit and all claims brought by any non-settling Indian tribes. Specifically, the Settlement Act resolves two distinct categories of claims. The first category of claims resolved by the Act includes claims for mismanagement of the Riverbed Lands, which lands were held in trust by the United States. The second category of claims resolved by the Act includes claims for the extinguishment by the United States of any right, title, or interest in the Disclaimed Drybed Lands. The Settlement Act explains its purposes in regards to these two categories of claims as applied to the three settling tribes:

> The purposes of this title are to resolve all claims that have been or could have been brought by the Cherokee, Choctaw, and Chickasaw Nations against the United States, and to confirm that the Indian Nations are forever disclaiming any right, title, or interest in the Disclaimed Drybed Lands, which are contiguous to the channel of the Arkansas River as of the date of the enactment of this title in certain townships in eastern Oklahoma.

Id. § 1779a.

Thus, with respect to the three settling tribes, the Settlement Act accomplishes two purposes: first, it extinguishes any claims against the federal government for mismanagement of any of the Riverbed Lands; and second, it extinguishes any right, title, or interest in the Disclaimed Drybed Lands (those Drybed Lands that non-Indians had occupied and developed).

In exchange for settling the two categories of claims (settlement of the claims of mismanagement of all the Riverbed Lands and extinguishment of all entitlements to the Disclaimed Drybed Lands), the three settling tribes named in the Settlement Act received a combined compensation of $40 million from the United States. Id. § 1779c.

Of the $40 million, fifty percent, or $20 million, was authorized for and appropriated to the CNO.  Id. § 1779c(c), (d).  Under the Settlement Act, the $40 million award was to be appropriated to three separate trust fund accounts corresponding to each of the three named Indian tribes in $10 million dollar allotments over four years, from fiscal year 2004 to fiscal year 2007.  Id.

**B.**

The Settlement Act, under § 1779f, also establishes a procedure to resolve any claims brought by any other Indian tribe not named in the Act as one of the three settling tribes, if the claims are brought under the Act and relate to the Riverbed Lands.  Id. § 1779f  (entitled "Release of Other Tribal Claims and Filing of Claims").  The Settlement Act refers to all other non-settling Indian tribes as "claimant tribe[s]."  Id. § 1779f(a)(1)(A).  By its terms, § 1779f does not apply to the CNO, Choctaw, and Chickasaw tribes.  Id.

In keeping with the overall purpose of the Settlement Act to extinguish all claims against the United States with regard to the Riverbed Lands, § 1779f attempts to annul all claims brought by all non-settling tribes if the claims fall within the same two categories of claims that the Settlement Act resolves with respect to the three settling tribes:

> Not later than 180 days after the date of enactment of this title, any claimant tribe that claims that any title, interest, or entitlement held by the claimant tribe has been extinguished by operation of section 605(a) [25 U.S.C. § 1779c(a)] or section 608(a) [25 U.S.C. § 1779f(a)] may file a claim against the United States relating to the extinguishment in the United States Court of Federal Claims.

Id. § 1779f(b)(1)(A) (emphasis added).  Incorporating by reference § 1779c(a) into § 1779f, the Settlement Act effectively extinguished non-settling Indian tribe claims that

06-5003, -5021                          5

fell within the first category of claims—claims for mismanagement of the Riverbed Lands: "No claims may be asserted in the future against the United States . . . for actions taken or failed to have been taken by the United States for events occurring prior to the date of the extinguishment of claims with respect to the Riverbed." Id. § 1779c(a). Likewise, § 1779f(a) extinguished non-settling Indian tribe claims that fall within the second category of claims—claims for the extinguishment of all right, title, or interest in the Disclaimed Drybed Lands:

> [A]ll right, title, and interest of any Indian nation or tribe other than any Indian Nation defined [in this Act] . . . in or to the Disclaimed Drybed Lands, and any such right, title, or interest held by the United States on behalf of such a claimant tribe, shall be considered extinguished.

Id. § 1779f(a)(1)(A).

Significantly, all claims brought by non-settling Indian tribes that fall within the two categories of claims described in the Settlement Act were extinguished by operation of law on the date the Settlement Act was enacted, December 13, 2002. Id. § 1779f(a)(1). The Settlement Act, however, includes a provision that permitted any non-settling tribe to file a claim against the United States for any claims extinguished by the Settlement Act, provided that such an action was filed within 180 days after the date of enactment. Id. § 1779f(b)(1)(A). If a non-settling tribe failed to file a claim under the Settlement Act within the 180-day statute of limitations, the tribe is "barred from filing any claim described" in the Settlement Act. Id. § 1779f(b)(1)(B).

To provide compensation to the non-settling Indian tribes for extinguishing all categories of claims covered by the Settlement Act, the statute creates "an interest-bearing special holding account" that is funded by ten percent of the funds "that would otherwise be deposited in a tribal trust account." Id. § 1779f(b)(1)(B). Thus, $2 million

of the CNO's $20 million award deposited in the CNO's trust account established by the settlement agreement was statutorily set aside for this special holding account. Id. Distribution of the funds in the special holding account depends on whether a claim was filed by a non-settling Indian tribe within the 180-day statute of limitations. If a claim was filed pursuant to § 1779f(b)(1) of the Act, the funds are not dispersed until a "final judgment" is rendered following a "final adjudication of that claim." Id. § 1779f(b)(3)(B). According to the Settlement Act, if a final judgment is less than the amount in the special holding account, the remaining funds revert back to the settling tribe trust fund. Id. If a final judgment is more than the amount in the special holding account, the entire account is used to satisfy the judgment and the United States provides any additional funds through a separate congressional appropriation. Id.

## C.

The UKB are descendents of the Cherokee people who originally occupied the southeastern portion of the United States in lands presently forming Georgia, Alabama, Tennessee, and the Carolinas. Through a series of treaties with the United States spanning the period from approximately 1817 to 1906, the Cherokee Indians were granted and re-located to lands now including the state of Oklahoma. The UKB claims that as a tribe of the Cherokee people, it can sue under § 1779f of the Settlement Act as a "claimant tribe" (or non-settling tribe) to recover damages from the federal government's mismanagement of the Riverbed Lands and extinguishment of any right, title, and interest in the Disclaimed Drybed Lands, which lands were held in trust by the government for all the tribes of the Cherokee.

The UKB filed the complaint in this action under § 1779f(b)(1) on June 10, 2003, within the period of the 180-day statute of limitations. All of the claims in the UKB's

complaint fall within the two categories of claims permitted by the Settlement Act to be brought against the United States by a non-settling tribe. Count I of the UKB's complaint seeks compensation for the extinguishment of all right, title, and interest to the Disclaimed Drybed Lands, as permitted under § 1779f(a) of the Settlement Act, which describes the second category of claims. Counts II through VI of the UKB's complaint seek damages for breaches of the federal government's fiduciary duties with respect to the Riverbed Lands and the minerals therein.

The UKB is the only non-settling tribe to file a complaint under the Settlement Act. In fact, § 1779f of the Settlement Act was included on behalf of the UKB:

> Several months ago, United Keetowah [sic] Band of Cherokee Indians, UKB, filed a motion to intervene in the Court of Federal Claims lawsuit. Although this motion was denied, the Department of Justice expressed reluctance to endorse H.R. 3534 [the Settlement Act] unless it was drafted to preclude the UKB from either bringing quiet title actions or from petitioning the United States to bring such actions. In order to ensure the UKB was not left without a remedy for pursuing its claims, the Justice Department proposed that the bill be amended to allow the UKB to pursue such claims in an action in the Court of Federal Claims. In addition, the Justice Department suggested that H.R. 3534 be amended to reserve some portion of the settlement proceeds until any claims that can be raised by the UKB are fully and finally litigated.

148 Cong. Rec. S11725-01 (daily ed., Nov. 20, 2002) (remarks of Senator Inhofe). The legislative history indicates that due to the UKB's attempt to intervene and dismiss the original 1989 lawsuit brought by the three settling tribes, which lawsuit triggered the negotiations that led to the Settlement Act, the federal government demanded that § 1779f be included in the Settlement Act for the UKB's benefit before it agreed to a final settlement. The federal government required § 1779f as part of the Settlement Act in order to receive its part of the bargain in the settlement that it would not be sued by any non-settling Indian tribes on claims similar to those resolved by the Settlement Act.

There is no dispute that the CNO, Choctaw, and Chickasaw Nations consented and agreed to include § 1779f in the Settlement Act and that the CNO specifically agreed to the financial provisions including the $2 million special holding account.

The Settlement Act was enacted on December 13, 2002, thereby simultaneously barring the UKB from bringing a mismanagement suit against the United States and extinguishing the UKB's title to the Disclaimed Drybed Lands. Pursuant to § 1779f(b) of the Act, the UKB filed this action in the Court of Federal Claims seeking compensation for the extinguishment of all right, title, and interest in the Disclaimed Drybed Lands and for the federal government's mismanagement of the Riverbed lands. The UKB is the only tribe to file an action under § 1779f of the Settlement Act.

**D.**

On September 7, 2004, the CNO filed a motion in this action for limited intervention as of right under RCFC 24(a) for the sole purpose of filing a motion to dismiss under RCFC 19. In its motion to intervene and motion to dismiss, the CNO argues that it is the sole titleholder of all Riverbed Lands identified in the Settlement Act and that therefore it is a necessary and an indispensable party to the present action. The CNO further argues that the UKB's claims are essentially claims against the CNO over which the Court of Federal Claims has no jurisdiction because of the CNO's sovereignty. The Court of Federal Claims granted the CNO the right to intervene under RCFC 24(a) and found the CNO a "necessary" and an "indispensable" party under RCFC 19. Because the court found the CNO an indispensable party that could not be joined because of its sovereignty, it concluded that it lacked jurisdiction over the action and dismissed the case. UKB, 67 Fed. Cl. at 704. The court entered a final judgment

on September 19, 2005. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(3).

## ANALYSIS

The CNO contends that it is both necessary and indispensable to the UKB's action and that the UKB's cause of action should be dismissed under RCFC 19[2] because the CNO cannot be joined to the suit because of its sovereignty. The trial court granted both the CNO's motion to intervene as of right under RCFC 24(a) and the CNO's motion to dismiss under RCFC 19.[3]

Under RCFC 19, a court must perform a two-step analysis in determining whether a claim should be dismissed for failure to join an indispensable party. First, under RCFC 19(a), the court must determine whether the absent party is "necessary." If an absent party is "necessary" but cannot be joined, the court must then determine under RCFC 19(b) whether the case should be dismissed.

RCFC 19(a) provides in relevant part:

A person . . . shall be joined as a party in the action if

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

---

[2] RCFC is virtually identical to Fed. R. Civ. P. 19. See Rules of the Court of Federal Claims Advisory Committee Notes (stating that RCFC 19 "closely conforms to FRCP 19"). Because our case law on RCFC 19 is limited, we rely on cases interpreting Fed. R. Civ. P. 19 in our analysis of what is a "necessary" party under RCFC 19.

[3] Because the UKB did not appeal the trial court's grant of the CNO's motion to intervene as of right under RCFC 24(a), we do not address this issue. We note, however, as does the Rules Advisory Committee to the Fed. R. Civ. P. that Rule 24(a)(2) was drafted as a "counterpart" to Rule 19(a)(2) and that an applicant is entitled to intervene in an action when his interest is comparable to that of a person that is found "necessary" under Rule 19(a)(2).

> (i) as a practical matter impair or impede the person's ability to protect that interest or
>
> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest . . . .

(Emphasis added). This circuit has not decided whether RCFC 19(a) determinations by the Court of Federal Claims are reviewable <u>de novo</u> or for abuse of discretion. We see no need to decide the issue here because we can reverse the trial court's decision under either standard.

The parties do not dispute that under RCFC 19(a)(1) complete relief can be accorded without joining the CNO as a party. Accordingly, we do not address this provision. However, under RCFC 19(a)(2), we hold that the CNO does not claim an "interest relating to the subject" of the UKB's action, which action was filed under and can be resolved by the Settlement Act.

While this court has not directly defined the "interest" requirement of RCFC 19(a)(2), this court has defined the equivalent "interest" requirement for intervention of right under RCFC 24(a).[4] In order to be joined as a party to a pending action under RCFC 24(a), the absent party's "interest" must be "of such a <u>direct</u> and <u>immediate</u> character that the [absent party] will either gain or lose by the <u>direct</u> legal operation and effect of the judgment." <u>Am. Mar. Transp., Inc. v. United States</u>, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (emphasis in original). We elaborated in <u>American Maritime</u> that the interest "may not be either indirect or contingent." <u>Id.</u>

---

[4] The Rules Advisory Committee to the Fed. R. Civ. P. comments that Rule 24(a)(2) was drafted to be a "counterpart" to Rule 19(a)(2) and that an applicant is entitled to intervene in an action when his interest is comparable to that of a person under Rule 19(a)(2).

We hold that our application of the "interest" requirement under RCFC 24(a) applies similarly to RCFC 19(a)(2). Thus, an absent party that claims it is "necessary" under RCFC 19(a)(2) to adjudicate an action must show that its "interest" in the subject matter of the underlying action is not "indirect or contingent" but is "of such a direct and immediate character that the [absent party] will either gain or lose by the direct legal operation and effect of the judgment." Id. Our understanding of the "interest" required in RCFC 19(a)(2) is supported by a majority of circuits that have addressed this issue. See Davis v. United States, 192 F.3d 951, 959 (10th Cir. 1999) (holding that the "interest" claimed by the non-party cannot be "fabricated" or "frivolous"); In re Torcise, 116 F.3d 860 (11th Cir. 1997) (finding that the non-party did not have an "interest" in the action because the underlying causes of action were different); Ramah Navajo Sch. Bd., Inc. v. Babbitt, 87 F.3d 1338, 1351 (D.C. Cir. 1996) (finding that the non-party's "interest" must be a "legally protected interest"); Keweenaw Bay Indian Cmty. v. Mich., 11 F.3d 1341, 1347 (6th Cir. 1993) (finding that the non-party's "interest" must be a legally protected interest that would be impaired by a judgment in the case); Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990) (finding that the absent party's interest must be "a legally protected interest" that is "more than a financial stake" and "more than speculation about a future event."); McLaughlin v. Int'l Ass'n of Machinists, 847 F.2d 620, 621 (9th Cir. 1988) (finding that the "interest" in 19(a)(2) must be more than speculation about a future event); Shell Dev. Co. v. Universal Oil Prods. Co., 157 F.2d 421, 424 (3d Cir. 1946) (finding a necessary party where the party "has an interest in the controversy of such a nature that a final decree cannot be made without affecting that interest."); Samuel Goldwyn, Inc. v. United Artists Corp., 113 F.2d 703, 707 (3d Cir.

1940) (finding the "interest" referred to in Rule 19 is "one which must be directly affected legally by the adjudication.").

In finding the CNO a "necessary" party under RCFC 19(a), the trial court focused on the "interest" that the CNO had alleged in its motion to intervene—the CNO's claim of exclusive rights to the Riverbed Lands. UKB, 67 Fed. Cl. at 700. The court concluded that "[t]he Cherokee Nation rightfully claims that . . . it is the titleholder to both the drybed and wetbed lands that are at issue in this case" and that "any decision regarding the UKB's interest in the lands would directly implicate the [CNO's] interest in the same lands." Id. at 700, 701. The trial court found this "interest" to be a legally protectable interest sufficient to confer "necessary" party status to the CNO. Id.

The court went on to analyze whether the CNO's interest would be adversely impacted if the CNO was absent from the litigation. The court concluded that because the UKB claimed an interest in the same Riverbed Lands to which the CNO claimed exclusive title, the action could adversely affect the CNO's ability to exercise sovereignty over the Riverbed Lands. Id. At 701. In so finding, the trial court further concluded that the pending litigation was really a dispute over competing claims to the same property and in such litigation, "one party's attempt to litigate the claim may impair or impede[] the other party's interest in the same property." Id. As a result, the court determined that the CNO was situated as required by RCFC 19(a) so that "its interest in the Riverbed lands may be impaired or impeded by this litigation" and that the CNO was therefore necessary to the UKB's litigation related to claims regarding these lands. Id.

We conclude that the trial court erred in finding the CNO a necessary party to the UKB's suit because the CNO does not claim an interest relating to the subject of the UKB's action. Unlike the trial court, we do not begin our analysis under RCFC 19(a)(2)

by characterizing the CNO's "interest." Rule 19(a)(2) requires that the "interest" claimed by the absent party "relat[e] to the subject of the action." Thus, the proper analysis to determine whether an absent party has an "interest" under Rule 19(a)(2) sufficient to permit intervention in a pending action must begin by correctly characterizing the pending action between those already parties to the action. Hence, our analysis under Rule 19(a)(2) begins by characterizing the UKB's action because it is the UKB's action that is "the subject of the action" in which the CNO must have an "interest."

The CNO claims and the trial court found that the subject of the UKB's action is the UKB's claim that it is a successor in interest in the Riverbed Lands themselves. We find, however, that the subject matter of the UKB's action is the statutory extinguishment of the UKB's claims by the government, which extinguishment occurred by virtue of the enactment of the Settlement Act and for which the UKB seeks compensation from the federal government. It is not, as the CNO contends and as the trial court agreed, an action to establish title to the Riverbed Lands themselves.

The UKB's action arises under the provisions of the Settlement Act. The Act strictly limits the claims that non-settling tribes can bring against the federal government to: 1) claims under § 1779c(a) for pre-Settlement Act mismanagement of the Riverbed Lands; and 2) claims incurred under § 1779f(a), which provision immediately extinguished non-settling tribes' interests in the Disclaimed Drybed Lands. Significantly, an action filed under the Settlement Act by a non-settling tribe may be filed only in the Court of Federal Claims and may demand only monetary compensation.[5] The Act expressly prohibits adjudication of current title to any portion of the Riverbed Lands:

---

[5] We note that this is consistent with the fact that the Court of Federal Claims is a court of limited jurisdiction that may only award monetary relief except

06-5003, -5021                    14

> This title shall not be construed to resolve any right, title, or interest of any Indian nation or of any claimant tribe, except their past, present, or future claims relating to right, title, or interest in or to the Riverbed and the obligations and liabilities of the United States thereto.

25 U.S.C. § 1779g. Thus, the Act only permits parties to sue the federal government for monetary damages and prohibits resolution of any claims of title to the Riverbed Lands.

The UKB filed the present action against the United States under § 1779f of the Settlement Act, which authorizes non-settling tribes to seek compensation from the federal government for the two categories of claims extinguished by the Settlement Act. In Count I of its complaint, the UKB seeks compensation for extinguishment of its interest in the Disclaimed Drybed Lands, which count arises under § 1779f(a) of the Act. In Counts II-VI of its complaint, the UKB seeks compensation for mismanagement by the United States of the Riverbed Lands, which counts fall under § 1779c(a) of the Act.

As we find that the "subject" of the UKB's action is limited to claims permitted under the Settlement Act, we consequently find that the CNO does not have "an interest relating to" the UKB's statutory claims. The "interest" the CNO alleges and that it claims is "related" to the subject matter of the UKB's statutory action is its interest in retaining its alleged exclusive rights to the Riverbed Lands. However, the CNO's "interest" in retaining exclusive rights to the Riverbed Lands is an "indirect" and a "contingent" interest to the UKB's statutory claims against the federal government. See Am. Mar. Transp., 870 F.2d at 1561. The CNO will not "gain or lose" title to lands that it alleges

---

where statutorily provided. See Kanemoto v. Reno, 41 F.3d 641, 644-45 (Fed. Cir. 1994).

ownership over if the trial court awards the UKB monetary damages under the Settlement Act. See id.[6]

Moreover, because the Settlement Act permits and the UKB's claims are limited to only money damages, the CNO does not have a "legally protectable interest" in the UKB's statutorily extinguished claims. In American Maritime, we required the "legally protectable interest" to be "'one which the substantive law recognizes as belonging to or being owned by the applicant.'" 870 F.2d at 1562 (quoting New Orleans Pub. Serv. v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir. 1984)) (emphasis in original). Because the UKB's action is a claim for damages under a statute, the CNO does not have a sufficient "interest" under RCFC 19(a) to permit it to intervene as a party who is "necessary" to adjudicate the UKB's action against the federal government.

**CONCLUSION**

Because we hold that the CNO has not claimed a sufficient "interest" under Rule 19(a), we need not and do not decide whether the other requirements of Rule 19(a) are met, namely, whether the disposition of the trial court's action will impair or impede the CNO's ability to protect its interest. On the bases set forth above, we reverse the finding by the trial court that the CNO is a necessary party and we remand to the Court of Federal Claims for further proceedings consistent with this opinion.

REVERSED and REMANDED

---

[6] Even though the CNO further argues that it has an "interest" in the UKB's action because of a reversionary interest in the funds set off in the special holding account pursuant to § 1779f, such interest is still contingent rather than direct. We still conclude that the CNO is not a necessary party.