The **UNITED KEETOOWAH BAND OF CHEROKEE INDIANS OF OKLAHOMA**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 03–1433L.

United States Court of Federal Claims.

Aug. 31, 2007.

Michael G. Rossetti, Washington, DC, for plaintiff.

James. M. Upton, U.S. Department of Justice, Washington, DC, with whom was Kelly A. Johnson, Acting Assistant Attorney General for defendant.

Lloyd B. Miller, Washington, DC, for Cherokee Nation.

## ORDER DENYING PERMISSIVE INTERVENTION

FIRESTONE, Judge.

Pending before the court is the Cherokee Nation's ("CNO") motion for leave to intervene in the above-captioned case pursuant to Rule 24(b)(2) of the Rules of the United States Court of Federal Claims ("RCFC").[1] CNO contends that its claims and defenses involve common questions of law and fact with the plaintiff's, United Keetoowah Band of Cherokee Indians in Oklahoma ("plaintiff" or "UKB"), complaint and, accordingly, that permissive intervention would be appropriate. The plaintiff opposes CNO's motion, arguing first that this court does not have subject matter jurisdiction over CNO's claims and defenses. In addition, UKB argues that intervention by CNO would substantially prejudice the original parties and unjustly delay adjudication of their rights, in contravention of RCFC 24(b). The defendant, the United States ("defendant" or "government"), does not oppose CNO's motion. For the reasons set forth below, CNO's motion for leave to intervene pursuant to RCFC 24(b)(2) is **DENIED.**

## BACKGROUND

The background facts as well as the history of this litigation may be summarized as follows. UKB originally filed a complaint in this court on June 10, 2003, seeking compensation for the extinguishment of all right, title, and interest to the Arkansas Riverbend Lands, and seeking damages for breaches of the government's fiduciary duties related to the Arkansas Riverbed Lands. UKB's complaint was filed pursuant to the Cherokee, Choctaw and Chickasaw Nations Claims Settlement Act, Pub.L. No. 107-331, 116 Stat. 2845 (2002) (codified at 25 U.S.C. §§ 1779–1779g) ("Settlement Act"), which was enacted following litigation by three Indian tribes alleging that the government had mismanaged portions of the Arkansas Riverbed that were held in trust for the tribes. The Settlement Act was intended to "resolve all claims that have been or could have been brought by the Cherokee, Choctaw and Chickasaw Nations against the United States, and to confirm that the Indian Nations are forever disclaiming any right, title, or interest in the Disclaimed Drybed Lands, which are contiguous to the channel of the Arkansas River. . . ." 25 U.S.C. § 1779a.

The Settlement Act authorized compensation to the Indian Nations for the settlement of these claims in the amount of $40 million, to be distributed as $10 million per fiscal year from fiscal year 2004 through fiscal year 2007. 25 U.S.C. § 1779c(c), (d). Fifty percent of the compensation was deposited in a tribal trust account for the Cherokee Nation. *Id.* The Settlement Act also established an interest-bearing special holding account, 25 U.S.C. § 1779f(b)(2)(A), which is funded by ten percent of the compensation that would otherwise be deposited into the tribal trust account. 25 U.S.C. § 1779f(b)(1)(B). The Settlement Act provides:

> Not later than 180 days after the date of enactment of this subchapter, any claimant tribe that claims that any title, interest, or entitlement held by the claimant tribe has been extinguished by operation of section 1779c(a) of this title or subsection (a) of

---

1. The Federal Circuit ruled previously in this case that CNO did not have a sufficient "interest" in the pending litigation to be deemed a legally "necessary" party, and accordingly that CNO was not entitled to be joined as a "necessary party" under RCFC 19(a)(2). *United Keetoowah Band of Cherokee Indians of Oklahoma v. United States*, 480 F.3d 1318, 1327 (Fed.Cir. 2007). In its decision, the Federal Circuit explained that RCFC 24(a)(2), relating to intervention of right, and RCFC 19(a)(2) contain an "equivalent" interest requirement. *Id.* at 1324. Under this holding, CNO cannot meet the "interest" requirement for intervention under RCFC 24(a)(2). Accordingly, CNO is seeking permissive intervention under RCFC 24(b).

Although CNO had been granted permission by this court to intervene for the purposes of asserting "necessary" party status, *see* Order, December 10, 2004, CNO did not at the time agree to be subject to the court's jurisdiction, except for the purpose of challenging jurisdiction over UKB's suit. The court allowed the intervention based on the conclusion that CNO was a necessary party. That conclusion has been set aside by the Federal Circuit. *United Keetoowah Band*, 480 F.3d at 1326. Therefore, CNO is not presently a party before the court and must be granted the right to intervene under RCFC 24(b) before it may become a party to the case.

this section may file a claim against the United States related to the extinguishment in the United States Court of Federal Claims.

25 U.S.C. § 1779f(b)(1)(A). The Settlement Act further provides that if a claim is filed under the above provision by any claimant tribe, and if a final judgment awards to a claimant tribe an amount that does not exceed the amount of funds in the special holding account, the judgment amount shall be distributed to the claimant tribe from the special holding account. 25 U.S.C. § 1779f(b)(3)(B)(i)(I). Any funds remaining in the special holding account shall be transferred to the appropriate tribal trust account of the corresponding Indian Nation. 25 U.S.C. § 1779f(b)(3)(B)(i)(II).

The Settlement Act was enacted on December 13, 2002. On June 10, 2003, less than 180 days after the enactment, UKB filed its complaint in this court. UKB charges that it is a successor-in-interest to the original Cherokee Tribe and therefore that it is entitled to compensation under the Settlement Act. On September 7, 2004, CNO filed a motion to intervene, for the limited purpose of moving to dismiss UKB's claim for failure to join an indispensable party and for lack of jurisdiction. CNO argued that it was indispensable on the ground that it is the sole successor-in-interest to the original Cherokee Tribe and therefore holds all title and all claims regarding the original Cherokee Tribe's riverbed lands. The court granted CNO's motion for limited intervention, and CNO's motion to dismiss was filed, on December 10, 2004. On September 16, 2005, this court granted CNO's motion to dismiss, holding that CNO was a necessary and indispensable party that could not be joined because it enjoyed sovereign immunity, and accordingly that UKB's suit must be dismissed. *United Keetoowah Band of Cherokee Indians of Oklahoma v. United States,* 67 Fed.Cl. 695 (2005).

UKB and the United States both appealed this court's decision to the United States Court of Appeals for the Federal Circuit. As noted above, n. 1, on March 19, 2007, the Federal Circuit reversed this court's decision, holding that CNO did not have a suffi-cient "interest" in UKB's claim to be deemed a necessary party. *United Keetoowah Band of Cherokee Indians of Oklahoma v. United States,* 480 F.3d 1318, 1326–27 (Fed.Cir.2007) ("CNO does not have 'an interest relating to' the UKB's statutory claims. The 'interest' the CNO alleges and that it claims is 'related' to the subject matter of the UKB's statutory action is its interest in retaining its alleged exclusive rights to the Riverbed Lands. However, the CNO's 'interest' in retaining exclusive rights to the Riverbed Lands is an 'indirect' and 'contingent' interest to the UKB's statutory claims against the federal government."). The Circuit also noted that "even though the CNO further argues that it has an 'interest' in the UKB's action because of a reversionary interest in the funds set off in the special holding account pursuant to § 1779f, such interest is still contingent rather than direct," and rejected CNO's argument that it was a necessary party on these grounds. *Id.* at 1327 n. 6.

On July 18, 2007, CNO filed the present motion seeking permissive intervention pursuant to RCFC 24(b). CNO contends that the central legal issue that must be addressed in order to resolve UKB's claim against the United States is whether UKB is a successor-in-interest to the original Cherokee Tribe. CNO argues that permissive intervention would allow CNO to defend itself against UKB's successor-in-interest claim and to protect the funds that were placed in the interest-bearing special holding account under the Settlement Act from being awarded to UKB.

## DISCUSSION

### I. Permissive Intervention Generally

CNO seeks permissive intervention, which is governed by RCFC 24(b). Permissive intervention is allowed, at the court's discretion, if "an applicant's claim or defense and the main action have a question of law or fact in common." RCFC 24(b)(2). Permissive intervention, under RCFC 24(b), serves a different purpose than intervention of right, under RCFC 24(a). Intervention of right is allowed when an applicant claims an interest in property that is the subject of a pending

action and "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." RCFC 24(a).

Permissive intervention, in contrast to intervention of right, usually involves adjudication of an additional claim on the merits. *See E.E.O.C. v. Nat'l Children's Center, Inc.,* 146 F.3d 1042, 1047 (D.C.Cir.1998). As such, permissive intervention is awarded at the court's discretion. *Chapman v. Manbeck,* 931 F.2d 46, 48 (Fed.Cir.1991) ("Permissive intervention under Rule 24(b)(2) is discretionary."). As Wright & Miller note, in the case of permissive intervention, the original action can be disposed of without prejudicing the legal rights of the applicant. 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1917 (3d ed. 1998) ("There seems to be little reason to apply ancillary jurisdiction to permissive intervention because the original action can be disposed of completely without foreclosing any interest of the applicant by the process of the court; his legal rights will not be prejudiced by its outcome.") (quoting *Developments in the Law—Multiparty Litigation in the Federal Courts,* 71 Harv. L.Rev. 874, 906 (1958)). Therefore, the application for permissive intervention must be timely and may not "unduly delay or prejudice the adjudication of the rights of the original parties." RCFC 24(b)(2). *See also Cherokee Nation of Oklahoma v. United States,* 54 Fed.Cl. 116, 118 (2002); *Karuk Tribe of California v. United States,* 27 Fed. Cl. 429, 432 (1993).

CNO argues that it has claims and defenses involving several questions of law or fact in common with the main action. Primarily, CNO asserts that both it and the United States take the position that UKB's claims

under the Settlement Act are without merit, contending that UKB cannot demonstrate that it had any interest in the Arkansas Riverbed Lands which would entitle it to monetary compensation under the Settlement Act. CNO contends that it seeks to oppose any argument by UKB that it is a successor-in-interest to the original Cherokee Tribe and that the United States has a similar defense against UKB's claims. Accordingly, CNO asserts that it meets the requirements for permissive intervention under RCFC 24(b).

## II. Subject Matter Jurisdiction

In considering CNO's motion for permissive intervention, the court must, as a threshold issue, determine whether it has independent subject matter jurisdiction to hear CNO's claims and defenses.[2] *See, e.g., Nat'l Children's Center,* 146 F.3d at 1046 ("Permissive intervention ... has always required an independent basis for jurisdiction."); *E.E.O.C. v. Nev. Resort Ass'n,* 792 F.2d 882, 886 (9th Cir.1986) ("A party seeking permissive intervention ... must establish a basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action."); *Brookner v. United States,* 27 Fed.Cl. 423, 424 (1992) ("[A] person seeking to intervene must have an interest in the transaction in suit that would be vindicable in its own right under the court's existing jurisdiction.").[3] *See also* 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1917 (stating that a motion for permissive intervention "must be denied, though all the requirements of Rule 24 are met, if the federal court cannot take jurisdiction with regard to the intervenor").

---

**2.** The court notes that while independent subject matter jurisdiction is required for permissive intervention, it is not required for intervention of right under RCFC 24(a). *See Klamath Irrigation District v. United States,* 64 Fed.Cl. 328, 334 (2005) ("[I]t is well-accepted that defendants intervening as a matter of right need not have independent jurisdictional grounds, but instead are covered by the doctrine of ancillary jurisdiction. In the court's view, this well-established jurisdictional doctrine ... is as applicable here as in any Federal court, all of which, of course, are of 'limited' jurisdiction."). This decision

considered a motion for intervention of right, and accordingly, CNO's reliance on its holding is misplaced.

**3.** The Federal Circuit has not specifically addressed this issue, but the requirement for independent subject matter jurisdiction is supported by overwhelming authority, as evidenced by the above-cited cases and which is catalogued at greater length in 7C Wright, Miller & Kane, *Federal Practice and Procedure* R 24 (3d ed.1998).

It is not disputed that this court is a court of limited jurisdiction, *Jentoft v. United States,* 450 F.3d 1342, 1349 (Fed.Cir.2006) (citing *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), and under the Tucker Act, 28 U.S.C. § 1491 (2000), may "render judgment upon any claims against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act simply confers jurisdiction on this court; to establish subject matter jurisdiction, a plaintiff must also identify a separate money-mandating statute upon which to base a claim for damages. *See Adair v. United States,* 497 F.3d 1244, 1250–51, 2007 WL 2164184, at *2 (Fed.Cir.2007); *Greenlee County, Ariz. v. United States,* 487 F.3d 871, 875 (Fed.Cir.2007) ("However, the Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.") (quoting *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005)). Accordingly, to prevail on its motion for permissive intervention, CNO must first demonstrate that this court has independent subject matter jurisdiction over its claims or defenses.

CNO contends that this court has subject matter jurisdiction because CNO will sue the United States in the event that UKB is awarded funds from the special holding account created under the Settlement Act. In particular, CNO argues that UKB is not entitled to funds from the special holding account because it is not a successor-in-interest to the original Cherokee Tribe, and that any action by the United States to permit UKB to obtain some of the funds could give rise to an independent suit in this court by CNO against the United States for breach of trust. CNO argues that to avoid this outcome, it should be allowed to present its "defense" (i.e., that UKB is not the successor-in-interest to the original Cherokee

Tribe) to UKB's claim in the pending litigation.

UKB argues that the court does not have independent subject matter jurisdiction over CNO's claims and defenses and accordingly that the court should deny CNO's motion for permissive intervention. UKB asserts that, at bottom, CNO seeks to resolve whether UKB is a successor-in-interest to the original Cherokee Tribe and contends that the CNO's argument is precluded by the Federal Circuit's characterization of UKB's action as one for "the statutory extinguishment of the UKB's claims by the government." *United Keetoowah Band,* 480 F.3d at 1326. UKB contends that its monetary claim involves only the United States and does not implicate any of CNO's rights or interests.

While CNO is correct that the argument it wishes to assert in this case—that UKB is not entitled to any compensation under the Settlement Act—is potentially similar to arguments the government may present, this court does not have independent subject matter jurisdiction over CNO's "defenses" to UKB's claims. In effect, CNO seeks to have this court determine which of two parties is the rightful successor to the original Cherokee Tribe. That dispute is a dispute between two private parties, which CNO agrees is outside the realm of this court's limited jurisdiction. *See Orion Scientific Sys. v. United States,* 28 Fed.Cl. 669, 670 (1993) ("[T]his court has no jurisdiction to hear or decide claims between private parties."); *Karuk Tribe of California,* 27 Fed.Cl. at 432 ("This court entertains suits against the government, not suits by American Indians against American Indians."). Moreover, in light of the Federal Circuit's ruling that UKB's litigation is limited to resolving UKB's pending monetary claims against the United States, *United Keetoowah Band,* 480 F.3d at 1326–27, the present litigation is to be resolved without implicating CNO's rights. Therefore the court does not have subject matter jurisdiction over CNO's "defense."

In addition, to the extent that CNO asserts that this court has subject matter jurisdiction over CNO's potential breach of trust action against the United States should the government allow UKB to obtain funds under the

Settlement Act, that action does not raise a common claim or defense with UKB's suit. CNO's potential claims against the United States for breach of trust do not involve the same claims or defenses that are at issue in UKB's pending lawsuit; whether the United States has breached any trust with the CNO involves claims and defenses that do not arise under the Settlement Act and are therefore separate from UKB's claims in this case. Moreover, unless and until the United States takes an action in breach of any trust with CNO in connection with the pending UKB lawsuit, no breach of trust claim exists for the court to consider.[4] This court does not have subject matter jurisdiction over anticipated claims against the United States. *See, e.g., Morris v. United States,* 392 F.3d 1372, 1375 (Fed.Cir.2004) ("[The Court of Federal Claims] does not have jurisdiction over claims that are not ripe."); *Rick's Mushroom Service, Inc. v. United States,* 76 Fed.Cl. 250, 255 (2007).

## CONCLUSION

For all of the foregoing reasons, CNO's motion for permissive intervention is **DENIED.** If CNO wishes it may participate in the case as amicus curiae.

**IT IS SO ORDERED.**

---

4. Having concluded that CNO's motion for permissive intervention must be denied because this court does not have independent subject matter jurisdiction over CNO's claims and defenses, the court does not reach the parties' other arguments, under RCFC 24(b), regarding timeliness or prejudice. Even if the court did have subject matter jurisdiction, while CNO's motion is timely and likely not prejudicial, it is clear for the reasons set forth above that CNO does not have a common claim or defense with UKB's litigation.