John R. GORSKI, Plaintiff, Pro se,

v.

The UNITED STATES, Defendant.

No. 09–742T.

United States Court of Federal Claims.

Aug. 17, 2010.

John R. Gorski, Plaintiff, pro se.

Shelley de Alth, United States Department of Justice, Tax Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

## I. RELEVANT FACTUAL BACKGROUND.[1]

In 1999, the City of Chicago ("the City") demolished a house and sold land owned by the Estate of Roman M. Gorski ("the Estate"), the father of John R. Gorski ("the Plaintiff") and Wayne Gorski, to satisfy unspecified outstanding legal bills. Gov't Att. at A–4. Plaintiff and Wayne Gorski were the sole heirs to the Estate. *Id.* On May 8, 2003, the Circuit Court of Cook County, Illinois ("the Circuit Court") entered judgment against the City in favor of Wayne Gorski, as the Administrator of the Estate, for $120,278.00, because the City failed to notify Plaintiff and Wayne Gorski of the pending demolition. *Id.; see also* Am. Compl. Ex. 5 at 9. On December 3, 2003, the Circuit Court entered the final notice of account for the Estate, discharging the case for $124,309.51, that included miscellaneous costs and the deduction of legal fees. Am. Compl. Ex. 5 at 2, 5.

On October 19, 2004, Plaintiff and his wife, Jean Gorski, filed a joint federal income tax return, Form 1040, for the taxable year 2003. Gov't Att. at A–5. Therein, Plaintiff stated that his occupation was "disabled" and that his wife was a Special Education Teacher. Gov't Att. at A–6. During the taxable year 2003, Plaintiff reported $13,634.34 in Social Security benefits and $60,764.71 from Mrs. Gorski's job. Gov't Att. at A–5, A–7. Their joint return claimed the standard deduction and did not claim a casualty loss. Gov't Att. at A–6.

On April 19, 2006, Plaintiff and his wife filed an amended joint federal income tax return, Form 1040X, for the 2003 tax year. Gov't Att. at A–8. On the amended return, itemized deductions and a casualty loss of $269,230.37 were reported and a refund was claimed for the entire amount of federal taxes paid for the 2003 tax year, *i.e.,* $8,251.00. Gov't Att. at A–8, A–10, A–11. The Gorskis also filed an Application for Tentative Refund, Form 1045, for claimed carry-back losses for the 2000, 2001, and 2002 tax years. Gov't Att. at A–15.

On June 13, 2007 and October 31, 2007, the Internal Revenue Service ("IRS") sent letters to the Gorskis, disallowing the 2003 refund claim in total, because casualty losses are deductible only in the taxable year that the casualty occurred, so that loss was not timely filed. Gov't Att. at A–1; Am. Compl. Ex. 2 at 1. The IRS also explained that the casualty loss was not allowed, because it was not substantiated, since the Gorskis "have not shown that the fair market value [of Roman M. Gorski's demolished house] immediately before the loss was more than you received or expected to receive as insurance proceeds or other compensation." Am. Compl. Ex. 2 at 1.

## II. PROCEDURAL HISTORY.

On October 29, 2009, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging that the IRS unlawfully denied his "claim of overpayment based on a . . . casualty loss." Compl. ¶ 1. On the same day, Plaintiff filed a Motion For Leave To Proceed *In Forma Pauperis,* that the court granted on November 2, 2009. On Decem-

---

1. The facts cited herein were derived from Plaintiff's July 20, 2010 Amended Complaint ("Am. Compl.") and Exhibits ("Am.Compl.Ex. 1–8"), and the Attachments to the Government's January 29, 2010 Motion For Joinder Of A Person Necessary For Just Adjudication ("Gov't Att. at A–C").

ber 28, 2009, the Government filed an Answer.

On January 29, 2010, the Government filed a Motion For Joinder Of A Person Necessary For Just Adjudication ("Gov't Mot.") to add Jean Gorski as a Plaintiff. On February 22, 2010, Plaintiff filed a Response ("Pl.Resp."). On February 23, 2010, the Government filed a Reply ("Gov't Reply"). On February 24, 2010 and March 22, 2010, the court convened telephone status conferences to discuss the Government's pending motion.

On March 18, 2010, the parties filed a Joint Preliminary Status Report ("JPSR"). On March 23, 2010, the court entered a Discovery Scheduling Order, providing that: fact discovery is to be completed on or before August 31, 2010; and the parties are to file a Joint Status Report on or before September 30, 2010, regarding further proceedings.

On May 4, 2010, the Government filed a Motion For Leave To File A Motion For More Definite Statement and requested that the court "address [the Government's January 29, 2010 Motion For Joinder[.]" 5/4/10 Gov't Mot. at 5.

On July 20, 2010, in lieu of filing a response to the Government's May 4, 2010 Motion, Plaintiff filed an Amended Complaint. On August 6, 2010, the Government filed a Motion For An Enlargement Of Time To File Defendant's Answer, that the court granted on August 10, 2010. In the Government's August 6, 2010 Motion, the Government also filed a Notice Of Withdrawal Of Defendant's [May 4, 2010] Motion. On August 10, 2010, the parties filed a Joint Motion For Extension Of Fact Discovery, that the court granted on August 12, 2010. Fact discovery is to be completed on or before December 31, 2010; and the parties are to file a Joint Status Report on or before January 31, 2011, regarding further proceedings.

Accordingly, this Memorandum Opinion And Order addresses only the Government's unresolved January 29, 2010 Motion For Joinder that is fully briefed and ready for the court's disposition.

## III. DISCUSSION.

### A. Jurisdiction.

 The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages ... the Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (citations omitted). Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc*) ("The Tucker Act ... does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be 'money-mandating.'") (citations omitted).

 The Tucker Act authorizes the United States Court of Federal Claims to adjudicate tax refund claims, if a taxpayer has paid the full assessed federal tax liability and timely filed a refund claim with the IRS stating the grounds for the claim. *See* 28 U.S.C. § 1491(a); 26 U.S.C. §§ 6511(a), 7422(a); *see also Shore v. United States,* 9 F.3d 1524, 1526 (Fed.Cir.1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full"). If the claim is denied by the IRS and

the taxpayer timely files suit, the United States Court of Federal Claims has jurisdiction to adjudicate the tax refund claim. *See* 26 U.S.C. § 6532(a); *see also* 28 U.S.C. § 1346(a)(1).

The July 20, 2010 Amended Complaint alleges that the IRS improperly denied Plaintiff's "claim of [a tax] overpayment due to [a] ... casualty loss." Am. Compl. ¶ 1. In the March 18, 2010 Joint Preliminary Status Report, the parties agreed that the court "has jurisdiction over this case to the extent that [Plaintiff] seeks monetary relief." JPSR at 1.

### B. *Pro Se* Litigants.

 In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers") (quotation and citation omitted). Indeed, it has been the tradition of the court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir. 1995).

### C. The Government's January 29, 2010 Motion For Joinder Of A Person Necessary For Just Adjudication.

#### 1. The Parties' Arguments.

##### a. The Government's Argument.

The Government argues that, under Rule 19(a)(1) of the United States Court of Feder-

al Claims,[2] Jean Gorski is a necessary party for just adjudication, because the October 19, 2004 joint tax return and the April 19, 2006 joint amended tax return evidence that Jean Gorski has a direct interest in this litigation and, without joinder, there is a substantial risk that the Government could be subject to "duplicative, or inconsistent, obligations." Gov't Mot. at 4. When spouses file a joint tax return, the federal tax owed, if any, is calculated on the aggregate and liability is joint and several, although joint filing does not create a new property interest for either the husband or the wife. *See* 26 U.S.C. § 6013(d)(3) ("[T]he tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."); *see also Gens v. United States*, 222 Ct.Cl. 407, 615 F.2d 1335, 1342 (1980) ("[A] joint income tax return does not create new property interests for the husband or the wife in each other's income tax overpayment."). Instead, each spouse has a separate interest in the refund, based on their proportion of the overpayment. *See Gens v. United States*, 230 Ct.Cl. 42, 673 F.2d 366, 368, *cert. denied*, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982) ("[T]he maker of the overpayments is entitled to the credit or refund[.]").

In the 2003 taxable year, Jean Gorski earned approximately 80% of the couple's income, paid the couple's entire withholding, as well as 79% of the claimed overpayment. Gov't Att. at A–5, A–7. If Plaintiff prevails in recovering the entire amount of the alleged overpayment, Jean Gorski could later sue the Government for her proportionate share, since the general principles of preclusion would not apply. *Id.* Therefore, Jean Gorski should be joined as a necessary plaintiff so that the court's judgment with respect to any

---

2. RCFC 19(a)(1) provides:

(a) Persons Required to Be Joined if Feasible. (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

potential refund is binding on both spouses. *Id.*

In *Kemp v. United States*, 131 F.R.D. 212 (N.D.Ga.1990), a United States District Court determined that the plaintiff's spouse was an indispensable party to a tax refund suit based on a joint return, because the spouse could possess an interest in any overpayment and that interest may subject the government to incurring "double, multiple, or otherwise inconsistent obligations." *Id.* at 212. Further, in *Kemp*, the court did not have evidence that the non-plaintiff spouse contributed to the overpayment. *Id.* In this case, however, Jean Gorski's contribution to the alleged overpayment is clearly established. Gov't Mot. at 7.

### b. Plaintiff's Response.

Plaintiff responds that RCFC 19(a) does not require joinder, if the individual to be joined does not have a demonstrable interest in the subject matter of the case. Pl. Resp. at 1. Joining Jean Gorski for the purposes of division of a potential refund is premature because, although the court has the authority to determine whether overpayments should be divided, that is not an issue before the court at this time. *Id.* The IRS holds each taxpayer filing a joint return "individually and totally liable" for any tax liability. *Id.* Therefore, determining the contribution of individual taxpayers by comparing gross income, taxable income, or withholding is "irrelevant to the issues of this case." *Id.* at 2. For this reason, in *Gens,* the court held that overpayments go "to the maker of the overpayment, [and] not the contributor to income." *Id.* (quoting *Gens,* 673 F.2d at 368).

Plaintiff attached a signed affidavit from Jean Gorski, attesting that she has no interest in the case. Pl. Resp. Att. at 1. In the affidavit, Jean Gorski assigned any right, title, or interest she may have in the potential refund to Plaintiff and promised that she would not bring another suit nor make any other claim for refund. *Id.* at 1–2. Therefore, Jean Gorski desires to remain separate from this proceeding, because Wisconsin is a community property state and her involvement may result in "commingling of funds and cause additional, and expensive legal consequences." *Id.* at 2.

### c. The Government's Reply.

Plaintiff correctly observes that *Gens* held that each spouse's interest in a potential refund is based on his or her *contribution* to the overpayment, not that person's contribution to the joint *income.* Gov't Reply at 1. Plaintiff, however, incorrectly argues that *Gens* supports the assertion that Jean Gorski is not a necessary party. *Id.* Instead, *Gens* dictates that Jean Gorski has an interest in any potential refund, because that court held that a spouse's proportionate contribution to the total tax payments is the correct ratio to use to ascertain each spouse's interest in a refund. *Id.* at 2. In this case, Jean Gorski contributed at least 79% of the alleged overpayment of $8,251.00 through employer withholdings from her paychecks. *Id.* Therefore, RCFC 19 requires the joinder of Jean Gorski, because her absence would leave the Government "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of this interest." RCFC 19(1)(B)(ii). Although the claimed casualty loss deduction stems from Plaintiff's inheritance, the source of funds for the alleged overpayment substantially came from Jean Gorski. Gov't Reply at 3.

In her February 8, 2010 affidavit, Jean Gorski seeks to assign her interest in the possible refund to her husband. Pl. Resp. Att. at 1. The Anti–Assignment Act, 31 U.S.C. § 3727(b), however, prohibits such assignments in claims against the United States until "the amount of the claim is decided, and a warrant for payment of the claim has been issued." Gov't Reply at 3 (quoting 31 U.S.C. § 3727(b)). Despite Jean Gorski's statement that she has no intention of bringing any claim against the United States with regard to this matter, the Anti–Assignment Act specifically prevents her from assigning her interest in the potential refund, since one purpose of the Act is to prevent possible multiple payment of claims. *Id.* at 3–4.

The Government does not seek to burden Jean Gorski, but rather to ensure that she is bound by the court's rulings. *Id.* at 4. Jean Gorski need not be actively involved in the suit, however, the Government can only en-

sure that the preclusive effect of the resulting judgment will apply to any future claim if she is joined. *Id.* Plaintiff's argument regarding the amount or distribution of the overpayment is irrelevant, because the Government has no interest in how the Gorskis divide any potential recovery. *Id.* at 4–5.

## 2. The Court's Resolution.

■ The United States Court of Appeals for the Federal Circuit has held that, to determine whether an individual must be joined under RCFC 19(a), the United States Court of Federal Claims must conduct a two-step analysis. *See United Keetoowah Band of Cherokee Indians of Okla. v. United States,* 480 F.3d 1318, 1324 (Fed.Cir.2007) ("Under RCFC 19, a court must perform a two-step analysis in determining whether a claim should be dismissed for failure to join an indispensable party."). First, the court must determine if the individual to be joined is "necessary." *Id.* An individual is deemed necessary if:

(A) in the person's absence, the court cannot grant complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

RCFC 19(a)(1)(A), (B).

If the necessary party has not been joined, the court must order the joinder of the party, so long as the party is subject to service of process and joinder will not deprive the court of subject matter jurisdiction. *See* RCFC 19(a)(2). An individual who refuses to join as a plaintiff may be made either a defendant or an involuntary plaintiff. *Id.*

Second, if joinder is not feasible, the court must determine, "if in equity and good conscience the action should proceed among the parties before [the court], or should be dismissed." *United Keetoowah,* 480 F.3d at 1324 (citing RCFC 19(b)). In this case, the court does not to address RCFC 19(b), because neither party has asserted that it would not be feasible to join Jean Gorski.

■ To determine if Jean Gorski is necessary, the court must determine whether she has an "interest relating to the subject of the pending action." RCFC 19(a)(1)(B). In *United Keetoowah,* our appellate court held that the "interest" must be "of such a direct and immediate character that the [absent party] will either gain or lose by the direct legal operation and effect of the judgment." 480 F.3d at 1324 (citations omitted). Although there is no contention by either party that Jean Gorski would stand to lose based on any decision in the immediate case, she does stand to gain. If Plaintiff fails to prevail, Jean Gorski would not be bound by that ruling. On the other hand, if Plaintiff prevails, the rules of collateral estoppel and res judicata would not prevent Jean Gorski from initiating a separate action against the United States. *See Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008) ("A person who was not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court.") (quotations and citations omitted).

Next, the court must determine if proceeding without Jean Gorski would either "impair or impede [her] ability to protect the interest," or, "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." RCFC 19(a)(1)(B)(i), (ii). Proceeding without Jean Gorski would not affect her ability to protect her interest in any potential refund, as she could bring a separate refund action, but would expose the Government to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." RCFC 19(a)(1)(B)(ii). In addition, in a joint tax return, each spouse's interest in a potential refund is based on his or her proportionate contribution to the alleged overpayment. *See Gens,* 673 F.2d at 368. In this case, Jean Gorski contributed over 79% of the alleged overpayment of $8,251.00 in the 2003 tax year through employer withholdings. Gov't Att. at A–7 (Jean

Gorski's 2003 W–2 showing a federal tax withholding of $6,493.97 for Jean Gorski for the 2003 tax year). Accordingly, Jean Gorski would be entitled to at least 79% of any potential refund.

■ Finally, Jean Gorski may not, at this time, assign her interest to any potential refund to Plaintiff, because the Anti–Assignment Act allows for assignment of claims "only after ... the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b); *see also Saladino v. United States*, 62 Fed. Cl. 782, 793 (2004) (relying on the Anti–Assignment Act to reject plaintiff's argument that he was the assignee of a third-party's tax refund claim). As such, Jean Gorski's attempt to assign her rights to Plaintiff is invalid.

Under RCFC 19(a), the court has no discretion and *must* order joinder if joinder is feasible and the party is deemed necessary. *See* RCFC 19(a)(2) ("If a person has not been joined as required, the court *must* order that the person be made a party.") (emphasis added). Although the parties disagree over whether there will be any hardship inflicted upon Jean Gorski, the court cannot consider issues of judicial economy or convenience, so long as joinder would not deprive this court of subject matter jurisdiction. *See United Keetoowah*, 480 F.3d at 1324 (citing RCFC 19(a)).

For these reasons, the court has determined that Jean Gorski is a necessary party under RCFC 19(a) and must be joined in this action.

## IV. CONCLUSION.

For the reasons stated herein, the Government's January 29, 2010 Motion For Joinder Of A Person Necessary For Just Adjudication is granted. On or before September 30, 2010, Plaintiff is ordered to file a Second Amended Complaint that joins Jean Gorski as a plaintiff, pursuant to RCFC 19(a). The Government will file an amended answer within 30 days thereafter.

**IT IS SO ORDERED.**